## DODD vs. WAKEMAN.

1. A parol contract to purchase land at sheriff's sale, for the benefit of a defendant in execution, and that he shall be entitled to the advance realized on a resale of it, or that he shall have a conveyance of it on reimbursing the purchaser, will be enforced in equity, even if free from fraud, unless the statute of frauds is properly invoked, by pleading, to nullify the contract.

2. And even in a case where the purchaser seeks the protection of the statute of frauds, if it clearly appears he has made use of such contract, or any other contrivance, to obtain the property sold under execution, for an inadequate price, or to the oppression of the defendant in execution, a court of equity, in the exercise of its legitimate functions, must grant relief.

Dodd v. Wakeman.

3. Any advantage gained by an agent, whether it is the fruit of performance or of violation of duty, belongs to his principal.

4. An agent or trustee, undertaking a special business for another, cannot, on the subject of that trust, act for his own benefit to the injury of his principal.

On final hearing, on bill, answer, and proofs.

*Mr. A. Q. Keasbey,* for complainant.

*Mr. Joseph Coult,* for defendant.

THE VICE-CHANCELLOR.

The complainant bases her right to relief on a parol contract, made by the defendant, whereby he agreed to purchase, at sheriff's sale, certain mortgaged premises belonging to the complainant, and then advertised for sale, hold the same in trust for her until they could be resold for their value, and pay her whatever might be realized over and above the sum paid by him. It is alleged the defendant, pursuant to this contract, purchased the premises for a sum just sufficient to satisfy the decree and costs, and resold them within less than five months, at an advance of $2930, (having paid $3570, and resold for $6500,) and now refuses to pay anything.

I think the rule may be considered settled in this state, that a parol contract to purchase land at sheriff's sale, for the benefit of the defendant in execution, and that he shall be entitled to the advance realized on a resale of it, or that he shall have a conveyance of it on reimbursing the purchaser, will be enforced in equity, even if free from fraud, unless the statute of frauds is properly invoked, by pleading, to nullify the contract. *Combs* v. *Little,* 3 *Green's Ch.* 310 ; *Marlatt* v. *Warwick and Smith,* 3 *C. E. Green* 109 ; *S. C., on appeal,* 4 *C. E. Green* 441 ; *Merritt* v. *Brown,* 6 *C. E. Green* 404. And even in a case where the purchaser seeks the protection of the statute of frauds, if it clearly appears he has made use of such contract, or any other contrivance, to obtain the property sold under execution, for an inadequate price, or to

·the oppression of the defendant, a court of equity, in the exercise of its legitimate functions, must grant relief. *Merritt* v. *Brown, supra; Walker* v. *Hill's Ex'rs*, 7 C. E. Green 519.

The defendant puts himself simply upon a denial of the contract, and does not seek the protection of the statute of frauds.

At the time it is alleged the contract was made, the complainant was a member of the defendant's family ; she is his sister-in-law ; had resided in his family before her marriage ; was married at his house, and had now returned there on separating from her husband, in consequence of his cruel treatment and grossly intemperate habits. Her husband is now dead. The defendant is a person of wealth and large experience in business. He professed to be deeply interested in the complainant, and sincerely desirous of helping her in her misfortune ; she trusted him implicitly, and seems to have made his counsel her law. Under his advice she resolved to apply for a divorce, and he and she had made journeys together in search of evidence against her husband. While he was in this position of power and influence over her, she applied to him for counsel as to what. she had best do respecting the sale of her property by the sheriff; he expressed the opinion that it would be sold for a sum sufficient to pay the mortgages, and to repay what she had paid on its purchase, and advised her to have the sale made on the day advertised, without adjournment. He says, at her request he requested the solicitor having the foreclosure suit in charge to sell on the day advertised, without postponement, but he refused to promise to do so unless requested by the. complainant, in person or in writing. The defendant further says, the complainant, on being informed of what the solicitor wanted, requested him to write a note to the solicitor, but that he replied he would rather she would attend to that part of the business. She thereupon wrote a note, read it to him, and it was taken or sent to the solicitor. This, the defendant says, embraces everything preceding the sale,

except it was mentioned at the breakfast table on the morning of the day of sale, that the sale was to be made that day; that he had made no arrangement with any one to buy the property, nor, indeed, had he the slightest expectation of doing so himself; in fact, when he left home in the morning he was in doubt whether he would attend the sale, though he had made no arrangement for any one else to do so, to protect the interests of the complainant. He did, however, attend, found no one there willing to pay more than the encumbrances, and, without seeking or even suggesting a delay, bid off the property for a sum just sufficient to satisfy the decree and costs. On his return home, he told his family he had purchased, but does not remember that he gave any information as to what he had bid, or that the complainant sought any.

This is the defendant's history of his purchase. Conceding it to be fair and truthful, a clear case of trust and confidence is made out, such as no tribunal of justice can permit him to abuse or betray to his own gain and another's injury. On his own showing, he undertook the management of this sale for the complainant, under an implied promise, at least, that he would guard her and protect her interests. Common fairness will not allow him to break it, that he may despoil her for his own enrichment. She gave the direction to sell, unconditionally, on the day first advertised, by his advice, under a trustful belief he was advising her for her benefit, and that she could safely follow it without danger of injury, at least, from him. Whether his counsel was given with or without a fraudulent purpose, when he voluntarily assumed the character of guide and protector, the law made it his duty to deal fairly with her, and to insure her safety, subordinated his rights to hers. There can be no doubt, under the facts as he states them, that he was her agent in this transaction. It is familiar law, founded in wisdom and sound policy, that any advantage gained by an agent, whether it is the fruit of performance or violation of duty, belongs to his principal. *Story on Agency*, §§ 207, 211. An agent or trustee, undertaking a special business for another, cannot, on the subject

of that trust, act for his own benefit to the injury of his principal. *Parkist* v. *Alexander*, 1 *Johns. Ch.* 396 ; *Condit* v. *Blackwell*, 7 *C. E. Green* 486 ; *Story's Eq. Jur.*, § 315 ; *Story on Agency*, § 210.

The question, whether or not the defendant purchased the mortgaged premises, pursuant to the contract alleged in the bill, is, in my judgment, free from all difficulty. I think the evidence clearly shows such a contract was made, and that the defendant has made it the means of obtaining title to the mortgaged premises, for little more than half their value. The complainant distinctly and positively swears such a contract was made. Another witness, who intended to attend the sheriff's sale to purchase, unless it was to be purchased for the complainant, declares, a short time before the sale he inquired of the defendant whether he intended to purchase for the benefit of the complainant, and, on receiving his assurance he did, abandoned the purpose of attending the sale. After the sale, this witness swears, the defendant, in answer to a direct inquiry, whether he had purchased the property for the complainant, stated he had. To three other witnesses, in different conversations with each, in terms more or less explicit, the defendant admitted he had made the purchase for the complainant, and after the resale by him, that he held the advance, realized over the purchase money paid by him, for her. In reply to suggestions from two of them, that he ought to execute a writing, manifesting her right in case of his death, he answered he had already provided for such a contingency by his will, and offered to show it to one of them to satisfy him her rights were properly secured. The case of the complainant receives strong corroboration from the admissions of the defendant, that he advised her to give direction that the sale should be made, without adjournment, regardless of what was bid, and that on disclosing the fact he was the purchaser, no information was given or sought as to what he had paid, or, if he gave such information, that no explanation was asked as to how it happened he consented to become the purchaser at a price so far below its admitted

value, without the slightest effort on his part to procure an adjournment or a better bid. It is incredible to me that this defendant could have procured the positive direction of the complainant for a sale, under any circumstances, on the day first advertised, regardless of the sum bid; but if it was a step in a plan to purchase the property for the complainant, it would then seem to be natural and reasonable.

I am fully satisfied the defendant made the contract alleged in the bill, and that he used it to defraud and despoil the complainant.

The complainant is entitled to the profit made on the resale of the mortgaged premises, and her costs in this action. I will advise accordingly.